[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11108

Non-Argument Calendar

_____

MIGUEL ANGEL MARTINEZ MOZ,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Board No. A099-616-065

_____

Before Lagoa, Brasher, and Wilson, Circuit Judges.

PER CURIAM:

Miguel Angel Martinez Moz appeals the Board of Immigration Appeals's final order affirming an immigration judge's denial of withholding of removal and relief under the Convention Against Torture. The government moves to dismiss Martinez Moz's appeal as moot, arguing that the issues are barred by collateral estoppel. Martinez Moz argues that his appeal is not moot and that the immigration judge and Board erred in denying him CAT relief. Because we conclude that Martinez Moz's appeal is not collaterally estopped but that the Board did not err, we affirm.

## I.

Martinez Moz, a native and citizen of El Salvador, first entered the United States in 2006. He was removed in 2012, entered again in 2013, and was arrested and deported one month later. He returned again in 2013, and was removed again in 2019. He later returned at an unknown date.

In December 2022, Martinez Moz was detained by the Department of Homeland Security. During a reasonable fear interview, he expressed concern that he would be tortured if he returned to El Salvador.

Martinez Moz applied for withholding of removal and CAT relief. In his application, he stated that he was persecuted by members of the MS-13 gang in retaliation for his refusal to join; that he

was assaulted by gangs and police; that the police believed he belonged to MS-13; and that he feared he would be tortured by both the police and MS-13 if he returned to El Salvador. On the section of his application inquiring about criminal history, Martinez Moz listed two arrests for driving under the influence and one conviction for refusal of a blood test.

At a hearing before an immigration judge, Martinez Moz testified that he returned to the U.S. in 2019 to flee persecution by the Salvadoran police. According to Martinez Moz, the police had beaten him because he had tattoos signifying that he was a member of MS-13. He explained that he had gotten the tattoos to fool MS-13 members into believing that he was a part of the gang. Martinez Moz acknowledged that he had been arrested at the house of a known MS-13 member, but denied he was a member or friends with members. He also acknowledged that he had been arrested in the U.S. for assaulting an officer in 2011 and for a weapons charge in 2015, in addition to the arrests he reported on his I-589 application.

Martinez Moz testified that MS-13 members had begun attempting to recruit him to join the gang in 2003 and, when he refused, beat and threatened him. He testified that this treatment continued through the following years and that, when he was last in El Salvador in 2019, police beat him. He stated that Salvadorian President Nayib Bukele violates human rights and that, because of his gang tattoos, he would be taken to prison, denied access to a lawyer, and tortured or killed if he ever returned to El Salvador. He

testified that his mother and sister, both of whom live in El Salvador, have not been harmed or threatened by the gangs or the government.

On cross-examination, Martinez Moz testified that the incidents in which he was harmed occurred in the San Miguel Department and the city of Santiago Nonualco. He replied inconsistently to questions about how many times he was harmed, sometimes testifying that there had been three incidents and sometimes that there had been four. He testified that, in 2018, he gave a reasonable fear interview in which he omitted some of the instances of gang violence that he had experienced. He also testified inconsistently about the timeline of getting his MS-13 tattoos, first testifying that he did not have them prior to his removal from the U.S. in 2012, then testifying that he received his first tattoo during his detention in 2012. And he testified that, in addition to his earlier-discussed arrests, he had also been arrested for larceny in 2016 and for assault in 2021.

On redirect examination, Martinez Moz testified that the reason he did not report previous incidents of gang violence during his earlier immigration proceedings was because it was sometimes difficult to recall instances of past trauma. On questioning by the immigration judge, Martinez Moz again testified that, despite having multiple prominent MS-13 tattoos and being arrested at a party alongside known MS-13 members, he was not a member of MS-13 and had only gotten the tattoos to protect himself from them.

At a second hearing, Martinez Moz's brother-in-law, Lewis Ortiz, testified that he had never known Martinez Moz to be a member of a gang. Another brother-in-law, Herberth Alvarez, testified that Martinez Moz had come to the U.S. to flee MS-13, and that Martinez Moz had never been a member of MS-13.

In support of his application, Martinez Moz submitted country conditions reports describing the environment in El Salvador. The reports highlighted arbitrary arrests conducted as part of the ongoing "State of Exception" instituted by President Bukele, and alleged reported instances of torture, inhumane conditions in prisons, and deaths occurring in state custody.

The immigration judge denied Martinez Moz's claims for withholding of removal and CAT relief, explaining that it was "implausible, bordering on contrary to common sense," that Martinez Moz received two MS-13 tattoos despite not being an MS-13 member. He highlighted the fact that there were discrepancies between Martinez Moz's reasonable fear interview, testimony, and I-589 application, such as Martinez Moz's failure to disclose his full criminal history in his application. And he found that Martinez Moz did not provide sufficient corroborative evidence to rehabilitate his extensively inconsistent testimony.

The immigration judge then assumed arguendo that Martinez Moz's testimony had been credible, but nonetheless found that he had not established a well-founded fear of future persecution on account of his claimed particular social group of "perceived gang members." He explained that Martinez Moz presented no

evidence that the police or gangs had expressed an interest in him since 2019. He acknowledged, based on the objective country conditions reports, that El Salvador was "facing serious issues with violence," but found that Martinez Moz had failed to demonstrate that he had an objectively reasonable fear of persecution on account of a protected ground. Accordingly, the immigration judge denied Martinez Moz's application for withholding of removal.

As for Martinez Moz's application for CAT relief, the immigration judge found that Martinez Moz's failure to establish a well-founded fear of future persecution necessarily meant that could not establish that it was more likely than not that he would be tortured if he returned to El Salvador. The immigration judge explained that Martinez Moz had not provided any credible evidence indicating that he would be at risk of torture by or with the acquiescence of the Salvadoran government. As such, the immigration judge denied Martinez Moz's application for CAT relief.

Martinez Moz appealed the immigration judge's decision to the Board. He argued that the immigration judge erred in finding that (1) he was not a credible witness; (2) the evidence did not sufficiently corroborate his testimony; (3) he did not have a well-founded fear of future persecution; (4) his claimed particular social group of "perceived gang member" was not cognizable; (5) he had not established a nexus between claimed past persecution and an asserted protected ground; and (6) in denying his application for CAT relief. Concerning his CAT claim, Martinez Moz argued that he had submitted "overwhelming evidence" of due process and

human rights violations by the Salvadoran government, and that he had sufficiently testified to past harm that he had endured from Salvadoran police and army officials. He argued that substantial evidence proved that the Salvadoran government would likely torture him upon his return, and that the immigration judge improperly denied his CAT application on the basis of the adverse credibility determination.

The Board dismissed Martinez Moz's appeal, concluding that the immigration judge's adverse credibility determination was not clearly erroneous. The Board pointed to specific reasons that Martinez Moz was not credible, highlighting the implausibility of his claim that he was not an MS-13 member despite having multiple MS-13 tattoos and noting his acknowledgment that he was present in an MS-13 member's home. After recounting the discrepancies between Martinez Moz's testimony and his reasonable fear interview and the fact that he omitted numerous criminal charges when filing his Form I-589, the Board concluded that Martinez Moz's supporting evidence was insufficient to corroborate his claim for withholding of removal. Because the Board affirmed the immigration judge's findings as to credibility and corroboration, it did not address any of Martinez Moz's other claims on appeal regarding his claim for withholding of removal.

The Board also affirmed the immigration judge's denial of CAT relief, concluding that Martinez Moz relied on the same facts that supported his withholding of removal claim. The Board determined that Martinez Moz had not presented individualized

evidence sufficient to establish his eligibility for CAT relief and that the immigration judge appropriately considered the risk of harm to him. The Board concluded that the immigration judge's finding that Martinez Moz had not shown that it was more likely than not that he would be tortured in El Salvador was not clearly erroneous.

Martinez Moz filed a timely petition to this Court requesting review of the Board's decision. After filing his petition, counsel for Martinez Moz moved for this Court to hold his petition in abeyance. Counsel argued that after Martinez Moz filed his petition, he was removed from the U.S., returned to El Salvador, and detained on gang-related charges. Martinez Moz's counsel argued that Martinez Moz's family and Salvadoran attorney were having difficulty locating or speaking to him and that counsel for Martinez Moz had filed a motion with the Board requesting that his proceedings be reopened in light of the new developments. We granted Martinez Moz's motion and held the petition in abeyance.

In Martinez Moz's motion to reopen the Board proceeding, counsel argued that Martinez Moz's detention in El Salvador provided corroborative, objective evidence to support his fear of torture. Counsel argued that new evidence of objective country conditions highlighted the torture that occurs after detention pursuant to the ongoing State of Exception in El Salvador, and that Martinez Moz, therefore, had new, material evidence in support of his contention that he was singled out for torture by the Salvadoran government. In support of the motion to reopen, counsel submitted

an affidavit from Martinez Moz's Salvadoran attorney and three articles describing conditions in El Salvador.

The Board denied the motion to reopen, explaining that Martinez Moz failed to explain how the new evidence he submitted showed that it was more likely than not that he would be tortured. The Board concluded that evidence of the State of Exception was not new, and that, at most, it showed that Martinez Moz had been detained in El Salvador and that "some persons are alleged to have been tortured while in such detention." It further found that the definition of "torture," as to a CAT claim, did not include substandard prison conditions that result from negligent acts or harm stemming from lack of resources. The Board concluded that, given the large number of detainees in El Salvador, allegations that a small number of detainees had been tortured were insufficient to establish a likelihood that, if proceedings were reopened, Martinez Moz could demonstrate that it was more likely than not that he would be tortured.

Martinez Moz did not seek our review of the Board's denial of his motion to reopen. The government then moved this Court to dismiss Martinez Moz's petition as moot, arguing that collateral estoppel prevented the Board from revisiting its decision that Martinez Moz was not entitled to CAT relief. A jurisdictional panel of this Court ordered that the government's motion and corresponding issue of whether Martinez Moz's petition is mooted by collateral estoppel be carried with the case.

## II.

"We review *de novo* the conclusions of law by the Board and Immigration Judge, but we review findings of fact for substantial evidence to support them." *Kazemzadeh v. U.S. Atty. Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). "To determine whether the Board gave reasoned consideration to a petition, we inquire only whether the Board considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1372 (11th Cir. 2021) (citing *Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1232 (11th Cir. 2013)).

## III.

Martinez Moz makes five arguments. First, he argues that collateral estoppel does not apply to his petition. According to Martinez Moz, the fact that he did not petition this Court for review of the Board's denial of his motion to reopen does not collaterally estop him from arguing that it is more likely than not that he would be tortured in El Salvador. Second, he argues that the Board erred in concluding that he failed to show that it was more likely than not that he would be tortured by or with the acquiescence of a public official. Third, he argues that the Board erred in concluding that an adverse credibility determination barred CAT relief. Fourth, he argues that the Board did not give reasoned consideration to the objective country conditions evidence regarding El Salvador. Lastly, he contends that the finding that he had not shown that it

was more likely than not that he would be tortured in El Salvador was not supported by substantial evidence. We take each in turn.

We begin with collateral estoppel. "Collateral estoppel precludes a party from litigating an issue in a subsequent action if that issue was fully litigated in a previous action." *Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1342 (11th Cir. 2004). "In order for the doctrine to apply, the following criteria must be satisfied:" (1) "the issue at stake is identical to the one involved in the prior proceeding;" (2) "the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action;" (3) "the issue was actually litigated in the prior proceeding;" and (4) "the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* (internal marks omitted).

A party may, in writing, move the Board to reopen a case in which it has rendered a decision. 8 C.F.R. § 1003.2(a). In support of its motion, the party is required to "state the new facts that will be proven" in support of relief, and the motion shall be granted only if it appears to the Board that the evidence sought to be offered is material and "was not available and could not have been discovered or presented at the former hearing." *Id.* § 1003.2(c)(1). The decision to grant or deny such a motion is within the Board's discretion, and the Board may deny the motion even if the moving party has made out a prima facie case for relief. *Id.* § 1003.2(a).

Here, we cannot say that collateral estoppel insulates the Board's original decision affirming the denial of CAT relief from

our review. The issues decided in the motion to reopen and in the Board's original decision are not identical—Martinez Moz's petition for review asks whether the Board made legal errors in its initial determination of his claim, whereas the motion to reopen presented the distinct issue of whether new evidence made it more likely than not that Martinez Moz would be tortured in El Salvador.

The government contends that the Board would be unable to comply with a remand order concerning the denial of CAT relief because it would be estopped by its own decision denying Martinez Moz's motion to reopen. But this theory of collateral estoppel would insulate the Board's initial CAT decision from our review. Because no issue decided by the Board in the motion to reopen appears identical to the issues presented in Martinez Moz's petition—and because it is unclear how collateral estoppel could bar us from reviewing the Board's initial determination—Martinez Moz's petition is not mooted by collateral estoppel. *See Dailide*, 387 F.3d at 1342.

Martinez Moz's second argument—that the Board erred by concluding that, because he failed to demonstrate a well-founded fear of future persecution, he necessarily failed to show that it was more likely than not that he would be tortured by or with the acquiescence of a public official—is unavailing. We have held that, to be eligible for CAT protection, "an applicant must . . . show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1293 (11th Cir. 2020) (quoting 8 C.F.R. §

1208.16(c)(2)). "Torture" is defined as an act which inflicts "severe pain or suffering, whether physical or mental" and must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). If an alien cannot establish a well-founded fear of persecution based on a protected ground, the alien cannot establish that it is more likely than not that he will be tortured as a result of that protected ground. *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1201 (11th Cir. 2009).

Martinez Moz acknowledges that the Board's finding is supported by our binding precedent. Instead of attempting to distinguish that precedent or arguing that it has been undermined to the point of abrogation, he argues that it is based on flawed reasoning. A panel of this Court cannot overrule existing precedent. So we cannot say that the Board erred in concluding that Martinez Moz's lack of credibility and lack of a well-founded fear of future persecution were fatal to his claim for CAT relief. *See A.P.A. v. U.S. Att'y Gen.*, 104 F.4th 230, 237-38 (11th Cir. 2024).

Martinez Moz's third argument—that the Board erred in finding that an adverse credibility determination barred CAT relief—fails on the facts. The Board did not find that Martinez Moz was ineligible for CAT relief based solely on his lack of credibility— his credibility was one factor among many. The Board also discussed the evidence Martinez Moz furnished regarding his withholding claim, the lack of individualized evidence concerning his CAT claim, and the dearth of corroboration concerning both.

Martinez Moz's fourth argument—that the Board did not give reasoned consideration to the objective country conditions evidence regarding El Salvador—is unconvincing. The Board concluded that the immigration judge considered the risk of harm to Martinez Moz based on the objective country conditions evidence. When doing so, the Board pointed to specific facts in the record, highlighted that Martinez Moz claimed that he was not an MS-13 member despite acknowledging that he had multiple MS-13 tattoos and that he was arrested at an MS-13 member's home; noted several discrepancies between Martinez Moz's testimony and his reasonable fear interview; and recounted how Martinez Moz had omitted numerous charges and convictions in his Form I-589.

The Board concluded that the immigration judge considered Martinez Moz's CAT claim in light of the objective country conditions and reasonably found that Martinez Moz had not shown that it was more likely than not that he would be tortured if returned to El Salvador. Because the Board provided a thorough explanation of its reasoning, it was not required to directly address each of Martinez Moz's arguments. *Immigr. & Naturalization Serv. v. Bagamasbad*, 429 U.S. 24, 25 (1976); *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006). Accordingly, we cannot say that the Board did not give reasoned consideration to Martinez Moz's claim for CAT relief.

Martinez Moz's final argument—that the Board's finding that he had not established that he would be tortured in El Salvador was erroneous—fails as well. Martinez Moz acknowledges that the

24-11108                 Opinion of the Court                 15

Board concluded that his lack of credibility and lack of a well-founded fear of future persecution were fatal to his arguments in support of CAT relief. As discussed above, he also acknowledges that our binding precedent supports the Board's reasoning. Upon thorough review of the record, we conclude that substantial evidence supports the Board's denial of CAT relief.

## IV.

For the foregoing reasons, we **AFFIRM**.